IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Brian Lake Balderson, | : | |
| Plaintiff | : | Civil Action 2:12-cv-0235 |
| v. | : | Judge Smith |
| Ohio Department of Rehabilitation and Correction, *et al.*, | : | Magistrate Judge Abel |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Brian Lake Balderson, an inmate at the Belmont Correctional Institution ("BCI"), brings this prisoner civil rights action under 42 U.S.C. §1983. This matter is before the Magistrate Judge on plaintiff's May 10, 2012 motion for a preliminary injunction (doc. 17) and June 4, 2012 motion for immediate removal of plaintiff from defendant's care until the case is adjudicated (doc. 22).

**I.     Allegations in the Complaint**

The complaint alleges that on October 29, 2009 plaintiff Brian Lake Balderson underwent surgery at the Ohio State University Hospital on his left knee. Immediately following the surgery, the knee was worse. Balderson complained, and he was examined two weeks after the surgery at the Franklin Medical Center. The surgeon said the surgery went well and that he did not see patients until at least six months after the surgery.

1

An April 2010 MRI on the left knee showed that there still were tears in the medial meniscus. A physical therapist told Balderson that his patella was elevated due to the surgery and that another surgery was required. Balderson's request for surgery was denied because there was degeneration in the left knee that made it likely he would require knee replacement surgery and the Department did not authorize knee replacement surgery unless the prisoner would remain in its custody for at least four years. Balderson then had about two years remaining on his sentence.

The complaint further alleges that Balderson was seen by orthopedists and physical therapists at the Franklin Medical Center no fewer than 20 times. Imaging and x-rays showed Schmorl's cysts on his spine. Medical personnel at the Franklin Medical Center consistently recommended a bottom bunk restriction, cortisone shots every six months, a cane, Tramadol, 100 mg., three times a day, and physical therapy. None of which Balderson receives except the cane. He has been given a variety of medications for pain– mainly psychotropic medications–but not Tramadol. He did once receive Tramadol, 50 mg., twice a day for six months.

Balderson continues to have pain and grinding in the knee. Now his knee refuses to bend.

Defendant Mona Parks, the Chief Medical Inspector for the Ohio Department of Rehabilitation and Correction, "seems to try to make the right decision but after they are given they are not enforced." When Balderson arrived at the Belmont Correctional Institution in November 2010, defendant Dr. Williams told him his "gig was up." He

took away plaintiff's cane, his medications, and his lower bunk restriction. Balderson believes Dr. Williams was "brought in as a kind of enforcer to allay the costs of inmates' medical needs." That same month, Balderson had an EMG, but prescribed MRIs and x-rays were not done. He is now treated by Dr. Weidman, who gave him a bottom bunk restriction that was never enforced.

Balderson has grieved the denials of medical care multiple times. Institutional inspector Kelly S. Riehle denied his most recent grievance.

The complaint identifies claims that ODRC and Director Mohr are negligent in their oversight of the health care provided by the Department's facilities; Bradley Eller, the BCI administrator of health care services, Dr. Weidman, Kelly S. Riehle, Mona Parks, Dr. Williams, and Michele Miller have been deliberately indifferent by failing to provide plaintiff with even basic medical needs; Dr. Seidman and Dr. Williams have taken Balderson off his pain medications and recommended an exercise program; Mona Parks has no power to perform her duties as Chief Medical Inspector; institutional inspector Kelly S. Riehle completely disregards the performance of her duties; and BCI Warden Michele Miller neglects to supervise prison staff.

  II.  **Arguments of the Parties**

    A.  **Plaintiff**

Plaintiff asserts that his physical condition has worsened and that his back went out over two months, but he was given nothing. He maintains that he has followed the procedure, but he has not been seen by a doctor. Plaintiff was informed by Nurse

Practitioner Wagner that "his knee is now bone on bone and that his back is swollen." Doc. 17 at 1. Nurse Wagner did not understand why he was not receiving pain medication even though it had been prescribed.

Plaintiff argues that he is facing immediate and irreparable harm by not having his medical needs attended to by defendants. Plaintiff maintains that a review of his medical records by the Court would demonstrate that he is receiving negligent care. Plaintiff seeks an order directing defendants to enforce his bottom bunk restriction; provide him with a usable cane; prescribe him Tramadol; provide him physical therapy; and investigate Bradley Eller, Institutional Inspector Kelly S. Riehle and other prison staff.

In his June 4, 2012 request for immediate removal from defendants' care until the case is adjudicated, plaintiff reported that he was given an unnecessary steroid injection in his knee. In his May 29, 2012 notice, plaintiff indicated his intent to begin refusing meals until adequate steps were taken to provide him healthcare. *See* doc. 19. Rather than wait seven days for plaintiff to begin a hunger strike, defendants ordered plaintiff to be stripped and placed into a medical isolation cell. Plaintiff maintains that he will continue to refuse meals. Plaintiff is no longer able to perform his tutoring job or access his Spanish or typing courses. He is supposed to be released in less than 60 days. He maintains that he will lose his good time credit and that his sentence will be extended. He suffers constant pain, and his health will deteriorate from lack of food.

4

**B.     Defendants**

In support of their memorandum in opposition to plaintiff's motion for a preliminary injunction, defendants submitted the declaration of Bradley Eller, the Quality Improvement Coordinator at BCI. According to plaintiff's medical records, Balderson suffered a back injury in a motor vehicle accident in June 1998. Doc. 23-1 at ¶ 6. On October 20, 2009, plaintiff underwent left knee arthroscopy with a partial meniscectomy. *Id.* at ¶ 7. An April 7, 2010 MRI revealed that the degenerative tear that had been debrided in the October 21, 2009 procedure . Plaintiff's lateral meniscus, quadriceps and patella tendons, cruciate ligaments, articular cartilage and collateral ligaments were all normal.  The MRI also showed multiple cyst structures that were not significant, and there were no additional injuries depicted that warranted treatment. *Id.* at ¶ 8. A November 17, 2010 EMG was normal. *Id.* at ¶ 9. Balderson was provided physical therapy, which consisted of muscle strengthening and range of motion exercises. *Id.* at  ¶10.  Plaintiff's complaints of pain have been treated with approved formulary medication and steroid injections. *Id.* at ¶ 11. Plaintiff's medical records indicate he was give a lower bunk restriction and issued two canes. *Id.* at ¶ 12. Plaintiff has been observed on video footage walking without the assistance of any ambulatory aid without difficulty. *Id.* at ¶ 13. Plaintiff was transferred to the Institutional Health Services for observation and monitoring when defendants learned that he was planning a hunger strike. *Id.* at ¶ 14. Within 48 hours of commencing his hunger strike, plaintiff requested and was provided food. *Id.* at ¶ 15.

5

Defendants argue that plaintiff has little likelihood of succeeding on the merits of his claim. Defendants maintain that he cannot demonstrate he or others would suffer irreparable harm in the event that his request for an injunction is denied. Defendants also argue that plaintiff has not demonstrated that public interest would be served by the issuance of the injunction.

### III. Preliminary Injunction

A district court must assess four factors in deciding whether to issue a preliminary injunction: "(1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief." *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001).

### IV. Discussion

Plaintiff has not established a substantial likelihood or probability of success on the merits or that he will suffer irreparable harm if an injunction is not issued. Although

there is evidence that plaintiff has a serious medical condition,[1] plaintiff has not demonstrated that the delay in treatment has been detrimental to his health.

Under the Eighth Amendment, prison officials are forbidden from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate an Eighth Amendment deprivation, a prisoner must show that a prison official acted with deliberate indifference to his serious medical needs. *Estelle*, 429 U.S. at 103-04. Prison officials are liable only if they know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere negligence does not constitute deliberate indifference. *See, Estelle*, 429 U.S. at 106. Further, a prisoner does not state a claim merely by pleading that he disagrees with the diagnosis or treatment. *Estelle*, 429 U.S. at 107-08; *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

A prison official does not act with deliberate indifference unless the official both knows of and disregards an excessive risk to inmate safety or health. The official must be aware of the facts from which she could draw the inference that a substantial risk of

---

[1] Defendants have provided a report documenting an April 7, 2010 MRI that showed plaintiff had a medial meniscal tear. Doc. 23-2. A November 16, 2010 Patient Transfer Summary indicates that plaintiff complained of a knee injury and low back pain with cysts. Doc. 23-3. A November 17, 2010 EMG revealed no evidence of radiculopathy, lumbar plexopathy, peripheral neuropathy or myopathy. Doc. 23-4.

serious harm exist, and she must also draw the inference. *Cairelli v. Vakilian*, 80 Fed. Appx. 979 (6th Cir. 2003). "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Estelle*, 429 U.S. at 838.

The Sixth Circuit requires verifying medical evidence to demonstrate the deleterious effect of the lack of treatment when only minor maladies or non-obvious complaints of a serious need for medical care were present. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001)(quoting *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994). Verifying medical evidence provides the court with the best available evidence as to whether the alleged deprivation is sufficiently serious and whether the inmate was at substantial risk of harm. *Id.*

In *Napier v. Madison County, Kentucky*, 238 F.3d 739 (6th Cir. 2001), an arrestee, who suffered from complete kidney failure, was kept from his scheduled dialysis treatment during the period he was in jail. Napier was scheduled to receive dialysis treatment three times per week. Napier indicated on the booking form that he required dialysis, but he also indicated that missing the appointment was "no big deal" because he had missed them before. Napier's medical providers and family telephoned the jail because they were concerned about him missing treatment. Napier did not seek

8

treatment the day he was released. He also failed to attend his next scheduled dialysis treatment. Napier's medical records indicated that he missed forty-one scheduled dialysis treatments that year.

The Sixth Circuit examined the seriousness of the deprivation by examining the effect of the delay in treatment and held that an inmate asserting that a delay in medical treatment rose to a constitutional violation must place verifying evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.  The Sixth Circuit was not persuaded by Napier's argument that he did not have to demonstrate the effect of the delay in treatment because he was denied a scheduled treatment rather than suffering a delay.

Here, Balderson has not offered any medical evidence demonstrating that he has suffered a detrimental effect from not having the bottom bunk restriction enforced, having a properly sized cane, or undergoing additional knee surgery.  Without verifying evidence establishing the detrimental effect of the delay in medical treatment, plaintiff is unlikely to succeed on the merits. Plaintiff also maintains that he requires Tramadol, but a prisoner does not state a claim merely by pleading that he disagrees with the treatment he has been provided.  *Estelle*, 429 U.S. at 107-08.

Plaintiff has provided no evidence indicating that failure to issue the injunction would cause substantial harm to others or whether the public interest would be served by granting injunctive relief. As a result, plaintiff's motion for injunctive relief should be denied.

### V.	Conclusion

For the reasons stated above, the Magistrate Judge RECOMMENDS that plaintiff's May 10, 2012 motion for a preliminary injunction (doc. 17) and June 4, 2012 motion for immediate removal of plaintiff from defendant's care until the case is adjudicated (doc. 22) be DENIED.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

s/ Mark R. Abel  
United States Magistrate Judge